EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of James C. McComb, deceased,

*vs.*

HENRY S. MCCOMB, II, ELIZABETH B. MILLS, ELIZABETH McCOMB MILLS, FLORENCE G. JAMES, JESSE MILLER SINCLAIR, JAMES McCOMB SINCLAIR, JOHN WILTON JAMES, JR., AND STEPHEN WILLIAM JAMES.

*New Castle, July 27, 1933.*

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainant.

*Clarence A. Southerland,* of the firm of Ward & Gray, and *Thomas McConnell, 3d,* of Philadelphia, Pa., for Henry S. McComb, II.

*Hugh M. Morris* and *G. Burton Pearson, Jr.,* for Elizabeth B. Mills, Elizabeth McComb Mills, Florence G. James, Jesse Miller Sinclair, and James McComb Sinclair.

*Francis deH. Janvier,* for guardian *ad litem* of Wilton James, Jr., and Stephen William James.

THE CHANCELLOR: In the view I take of this case, it is unnecessary for me to express my views upon certain questions which have been raised and extensively argued upon one of the briefs.

The question propounded by the complainant upon which it seeks to be instructed arises out of the wills of Henry S. McComb and his son, James C. McComb.

Henry S. McComb died December 30, 1881. He left a will by which he created a trust for the benefit of his son, James C. McComb, for life and after his death the corpus was to be conveyed to such person as James should appoint, in default of appointment to the child or children that might survive him or to their issue and in the event no child or children or the issue of such survived him, then to the testator's heirs or distributees as in case of intestacy.

James C. McComb died August 28, 1931. He left a will by which he disposed *inter alia* of the estate over which his father had given him a power of appointment. He undertook to do this by devising and bequeathing an equal

one-third share thereof in trust for each of his three children for life. The children were two daughters and one son. Upon the death of any child, he directed that the share of such deceased child should be conveyed absolutely to his or her child or children, or the issue of any such as might be deceased upon the arrival of the youngest child or issue of such at the age of twenty-one years; in the event of the death of any child without issue, cross-remainders to the survivor or survivors and their issue; and in case all the children died without issue, then to the testator's heirs as on intestacy.

The question presented here has to do with the share of Henry S. McComb, II, son of James C. McComb. The son was born August 22, 1882. It is contended by his solicitors that the remainders over after his death are void because they are offensive to the rule against perpetuities, and that because of the rest of his father's will, which I have not seen fit to set out, he is entitled to have conveyed to him immediately the entire share set apart for him absolutely, free of all trusts. He has made demand upon the complainant as trustee to that effect.

The other parties who have filed briefs contend, that the will of James C. McComb in conjunction with his father's does not violate the rule against perpetuities and that the property held in trust for Henry S., II, for life, etc., should not be released from the trust.

Since the estate limited to Henry S., II, by James C. is conferred by virtue of a power of appointment created by Henry S., the elder, it is, for the purpose of testing whether the rule against perpetuities has been violated, as though the limitations made by James C. had been made by his father, Henry S., the elder. *Equitable Trust Co. v. Snader,* 17 *Del. Ch.* 203, 151 *A.* 712.

Now it is at this point that an important fact needs to be emphasized—a fact which is the focal one in the argument which has been presented at the bar and on the

briefs. The fact referred to is that Henry S. McComb, II, was not living when his grandfather, Henry S., died. As stated, the grandfather died December 30, 1881, and his grandson, Henry S., II, was born August 22, 1882, a period of two hundred and thirty-five days after the death of his grandfather. Was Henry S., II, *in esse* at the time of his grandfather's death when the latter's will took effect? If he was not, then plainly an attempt by Henry S., the elder, to limit estates to the children and issue of his nonexisting grandson would be in violation of the rule against perpetuities. The offense would be that he had taken the estate out of commerce for a longer period than a life or lives in being and twenty-one years thereafter. If therefore Henry S., II, was not in the contemplation of the law in being on December 30, 1881, the limitations over after his death are void. This is because the paradox prevails, that what James C. McComb, the immediate testator, expressed as his wish is to be taken by relation back as the expressed disposition of his father Henry S., the elder, the creator of the power.

But if Henry S., II, is considered by the law as in being on December 30, 1881, notwithstanding his delivery from his mother's womb did not occur until two hundred and thirty-five days later, then the limitations over to his children after his death are not offensive to the rule, because in that case the ultimate estates must vest, without any possibility otherwise, within a life in being, viz., Henry S., II's, and twenty-one years thereafter.

Now this brings me down to the question that is determinative of the case according as it is answered one way or the other. The question is whether the gift made by Henry S. McComb, the elder, to the children of his unborn grandson, which the law in the retrospect considers him to have made, is a gift that falls under condemnation as a technical perpetuity. The limit beyond which the vesting of an estate may not be postponed and thereby taken out

of commerce, is commonly stated as being not later than twenty-one years after some life or lives in being. *Equitable Trust Co. v. Snader, et al.*, 17 *Del. Ch.* 203, 151 *A.* 712. The twenty-one year period came to be a period in gross, added by the courts, in extension of the period measured by a life or lives in being. Originally, however, it appears to have been a period added simply to cover minority, it being considered that no harmful consequences could ensue from such an extension because of the incapacity of minors to convey before reaching majority. Finally, however, it became settled by the House of Lords in *Cadell v. Palmer*, 7 *Bligh, N. S.* 202, 5 *Eng. Reprint* 745, that the term of twenty-one years need have no reference to the minority of the devisee, and that it should be allowed as an additional period in gross.　.

It was long ago determined, and has never since been questioned, that for the purposes of the rule a child in *ventre sa mere* is to be regarded as a life in being; and so in recognition of that principle we find it frequently stated in judicial pronouncements that the period of gestation, usually stated as nine months, is to be added to the life or lives in being. But I do not understand it ever to have been held that a period of gestation measured by a definite number of months or days is to be regarded as a period to be added in gross, similar to the twenty-one year period. The reason for its allowance is such as to indicate otherwise, for it is to be remembered that a child in course of gestation is regarded by the law as *in esse* for the purpose of the rule, and hence the only reason for taking any notice of the period of gestation is to inquire whether a life, or one of the lives, during which the right of alienation is postponed, is in being. In *Cadell v. Palmer, supra*, it appears to have been expressly decided that a number of months equal to the "ordinary (or longest) period of gestation" is not to be added in gross and that the period of gestation is to be allowed only when the gestation exists.

The solicitors for Henry S. McComb, II, strongly depend on the last stated proposition, that is to say that the period of gestation is to be allowed only to the extent that it actually exists, as the starting point of their principal argument. Starting with that proposition they refer to medical authorities and text-writers for the purpose of showing that it is impossible in any particular case to say when conception took place and therefore when the period of gestation commenced, and hence when the life came into being. All that can be asserted with any positiveness in respect to that matter is, that in the ordinary course of human nature the usual length of the period of gestation is from two hundred and sixty to two hundred and eighty days, the average being about two hundred and seventy days. I refrain from citing the authorities in support of that statement. It appears to be admitted on all sides in this case.

But I think it may be true, as stated by the solicitors for Henry S. McComb, II, that cases have occurred where the period of gestation is as low as two hundred and twenty days and as high as three hundred and thirty days. Cases lying at or near the extremes are of course abnormal.

Now if Henry S. McComb, II, was carried by his mother for the average period of two hundred and seventy days, it is at once apparent that his birth two hundred and thirty-five days after his grandfather's death conclusively shows him to have been conceived and *in esse* at least thirty-five days before that event. But, say his solicitors, it being scientifically impossible to assert with assurance that the period of gestation had not commenced in his case as late as the day after his grandfather's death (which would make the total period as much as five weeks below the average), the court would be unwarranted in concluding that he was in being when his grandfather died. If the period of gestation, measured in months (usually stated to be nine) is not allowed in gross, but only as the fact is,

it follows, the argument goes, that Henry S., II, may have come into being after his grandfather died.

The head to which this speculation comes is this—that since the rule against perpetuities requires that the vesting must, without any possibility of doubt, occur within the prescribed period, it would be violative of that rule if any shadow of doubt lingers as to whether the life in being during which the inalienability was to continue, was in fact in being.

But this argument is a mistaken one. It confuses the possibility of the existence of a fact with the possibility of proving it. It is true of course that if by any possibility events may so occur that the vesting of a future interest will not take place until after the limits of perpetuity have been passed, the limitation will be struck down by the law. The fact that vesting may take place within the period will not satisfy the law. It must vest, if at all, within the period. But this is quite different from saying that if by any possibility an error of fact may be committed in the process of ascertaining what the factual situation is with respect to whether a life is in being by which the rule's operation is to be tested, the law will say that the rule has been violated. Henry S., II, was as a matter of fact *in esse* when his grandfather died or he was not. If he was, then it is admitted the rule against perpetuities is not violated, because by no possibilites could the limitations run beyond the forbidden period. If he was not, then the limitation to his children is void because of remoteness. The fact of his being *in esse*, is disputed. It is the office of proof to resolve a fact in dispute; and if the possibilites are such that proof of it which is unworthy of the geometrician's Q. E. D. is not available, it would not justify a court in giving up in despair.

In substance the argument as made by the solicitors for Henry S. McComb, II, is, that because it is incapable of demonstrative proof that their client was not conceived

as shortly as two hundred and thirty-four days before his birth, therefore there is a possibility that if the court should say that he was conceived as early as the average child, viz., two hundred and seventy days before his birth, the principle of the rule's application will be violated which insists that the period defined by it should by no possibility be prolonged. This is confusing two unrelated possibilities and amounts it seems to me to a play upon words.

No case has been cited which shows that courts will refuse to ascertain and declare when conception took place. The best method at hand (at all events the one here assumed by the solicitors) for ascertaining that fact is, to start from the date of birth and count back a number of days during which, under all the evidence, the court believes the period of gestation to have continued. In that process, courts will take judicial notice of the ordinary period of gestation. 23 *C. J., p.* 146; *Chamberlain on Evidence,* § 770. In the case of *In re McNamara,* 181 *Cal.* 82, 183 *P.* 552, 7 *A. L. R.* 313, the court took judicial notice of the length of the period of gestation as it occurs in the ordinary course of nature, and, presuming that nature had taken its ordinary course in the case before it, found, in conjunction with other facts, that the child of a married woman was an illegitimate one. In *Hall v. Hancock,* 15 *Pick. (Mass.)* 255, 26 *Am. Dec.* 598, Chief Justice Shaw decided that a child is considered *in esse* at a period commencing nine months previously to its birth, and that where there is no evidence to rebut the presumption, it is conclusive. A child born eight months and four days after the testatrix's death was presumed by the court in the case of *In re Wells' Will,* 129 *Misc.* 447, 221 *N. Y. S.* 714, to have been conceived before the death of the testatrix and therefore to have been "living" at that time. This presumption was based on the fact that in the ordinary and usual course of nature, the period of gestation was considered by the court as in the neighborhood of two hundred and eighty days. When the

presumption arises, based as it is on the usual course of nature, the court in the case just cited held that when no evidence is offered to rebut it, the presumption is conclusive.

The question here is one of fact. That Henry S., II, was in being when his grandfather died is, as before observed, either so or not so. When it is suggested that he was in being because by the usual operations of nature we are entitled to believe it, it is answered that we should not believe it because nature may have acted in his case in one of her unusual and, what I may call, crotchety moods. That is the way the argument appears to look to me. Inasmuch as I am required to pass upon the fact of Henry S., II's, being *in esse* or not, I am compelled to accept the conclusion which the usual and normal operations of nature suggest, especially when there is not a hint of the slightest kind of any fact or circumstance to indicate that the abnormal rather than the normal was nature's law in his case. I am impelled, then to the conclusion, that Henry S. McComb, II, was a person in being when his grandfather died and that therefore the interests conferred by his grandfather's will, retrospectively uttered by his son in the exercise of a power, upon Henry S., II's, children, were postponed in their vesting during a life in being and twenty-one years thereafter and are consequently not violative of the rule against perpetuities.

But, it is said, while a child in *ventre sa mere* may be regarded as a person *in esse,* yet it can only be so for the purpose of enabling him to take; but not for the purpose of ascertaining a period. *Blassom v. Blassom,* 2 *De G., J. & S.* 665, 46 *Eng. Reprint* 534, is cited in support of that statement. I do not read that case as laying down any such rule that the life of a child in *ventre sa mere* can never be used for the purpose of testing whether the period prescribed by the rule against perpetuities has been exceeded. The contrary was expressly held by all the Judges in *Thellusson v. Woodford,* 4 *Ves., Jr.* 227, 11 *Ves., Jr.* 112, decided

in 1805 both in the Court of Chancery and in the House of Lords, and by *In re Wilmer's Trusts*, [1903] 1 *Ch.* 874, decided in the first instance by the Chancery Division and affirmed on appeal, [1903] 2 *Ch.* 411. On appeal it was also said in that case that the law's contemplation of the child in *ventre sa mere* as a person *in esse* for the purpose of the rule against perpetuities would be adhered to even though it might be in the interest of the child that it be adjudged otherwise.

The case of *Moore, Ex'r., v. Ennis, et al.*, 10 *Del. Ch.* 170, 87 *A.* 1009, is of no pertinency in the present connection, for there the question was whether a child in *ventre sa mere* could be considered as "born." Here we are concerned with whether such a child is *in esse*. Whether a distinction can be predicated on the difference in expression I need not discuss. See *Hall v. Hancock, supra,* where the query is raised; and *Villar v. Gilbey,* [1907] *A. C.* 139. Whatever might be thought to be the significance of "born" as compared with "in being," certain it is that the law is too thoroughly settled to admit of question, that for the purposes of the rule against perpetuities a child in *ventre sa mere* is a person in being.

I am unable to appreciate the significance in this case of those cases cited and strongly emphasized by the solicitors for Henry S. McComb, II, which hold, that the law conclusively presumes that a man or woman may at any time procreate offspring, no matter how contrary to the law of nature it may be for a child to spring from aged loins. See *du Pont v. du Pont*, 18 *Del. Ch.* 316, 159 *A.* 841; *Taylor v. Crosson*, 11 *Del. Ch.* 145, 98 *A.* 375. In those cases the law presumes in favor of a possibility of procreation and will admit of no evidence to refute it. By analogy, it is argued, the law should with equal conclusiveness decline to allow any refutation of the possibility that Henry S. McComb, II, came into being, that is to say, was conceived, as shortly as two hundred and thirty-four days

before his delivery. But, if I have read the cases aright, the authorities reveal the law as declining to apply such an irrefutable presumption in cases in which perpetuities are involved. What they appear to me to hold is this, that a presumption arises, where the question of a life in being is raised in connection with a perpetuity, that unless something appears to the contrary a life will be regarded as in being for the purposes of the rule from the time before birth when the period of gestation commenced and that the length of that period may be taken as presumably to have been the usual and normal one.

It is argued that the only cases in which it can be asserted beyond all possibility of doubt that a child was in being at the time of another's death are in those cases where the child is a posthumous one—that is to say a child of the one whose death marks the ascertainment of the contingency. This however is not the law. The only authorities which the diligence of solicitors has been able to find as bearing on the question are admitted by them to be opposed to their contention. *Thellusson v. Woodford, supra; In re Wilmer's Trusts, supra.* In those cases it is true, as pointed out by the solicitors for Henry S. McComb, II, that while the children were not posthumous ones, yet they were born so shortly after the death that marked the contingency that by no scientific possibility could they be said not to have been in being when the contingency occurred. The cases stand as authority, however, for the proposition that a child in being, for the purposes of the rule, need not be a posthumous one in the sense above mentioned. The only point in the emphasis laid upon the posthumous character of the child is to point out that no possibility could exist of its not being *in esse* when the contingency occurred. I have, however, already disposed of the debate over the question of possibilities and nothing needs to be said further on that point.

The fact that the period of gestation becomes of

moment, as it does here, in its time relation to the commencement rather than at the end of the contingency, as is most often the case, is of no significance. *Lewis* on the *Law of Perpetuities,* *148.

Other questions discussed at length on the brief of solicitors for Elizabeth B. Mills, *et al.,* I refrain from answering because they appear to me to be prematurely raised.

The foregoing results in the conclusion that the limitations over to the children of Henry S. McComb, II, are not void for remoteness, and that the decree should instruct the complainant to refuse to comply with his request that the complainant convey, etc., as demanded by him.

Decree accordingly.