GRACE VALE ASCHE, WILLIAM G. VALE and GEORGE T. REED, JR.,
Executors under the will of Ruby R. Vale, deceased,
Plaintiffs,

*vs.*

GRACE VALE ASCHE ET AL.,
Defendants.

*New Castle, January 14, 1966*

*Blaine T. Phillips,* of Berl, Potter & Anderson, Wilmington, for plaintiffs and defendants Ruby R. Vale Foundation and Grace Vale Asche, William G. Vale and The Milford Trust Co., as trustees under the will of Ruby R. Vale.

*Richard J. Abrams,* of Richards, Layton & Finger, Wilmington, for the defendants Vale Asche Ackerman, Bettyann Asche and Bank of Delaware, executors of the estate of Elizabeth W. Vale.

*Andrew B. Kirkpatrick, Jr.,* of Morris, Nichols, Arsht & Tunnell, Wilmington, guardian ad litem for the defendants Asche Ackerman and her unborn issue, the unborn issue of Vale Asche Ackerman and Bettyann Asche, and the unborn issue of Grace Vale Asche.

*E. Dickinson Griffenberg, Jr.,* of Killoran & Van Brunt, Wilmington, guardian ad litem for defendants Elizabeth Anne Asche, Frederic Bermingham Asche, III, Edward Craig Asche, Franz Monroe Asche, Elizabeth Vale Asche, the lawful issue of the children of Frederic B. Asche, Jr.

*Januar D. Bove, Jr.,* Atty. Gen., of the State of Delaware since succeeded by David P. Buckson.

MARVEL, Vice Chancellor: This Court's judgment in the above proceedings having been substantially reversed (see opinion in 210 *A.2d* 306), the case was remanded with instructions to take such further proceedings therein as may be necessary in conformity with the opinion of the reviewing court. Such opinion, while upholding the judgment below insofar as it had determined that the provisions of the will of the late Ruby R. Vale having to do with the establishment of a charitable foundation were valid, directed that the judgment below be amended so as to permit further examination into the possible validity of intended gifts of the testator following directions to accumulate $2,000,000 of trust income for payment over to the Ruby R. Vale Foundation for educational uses and purposes. Accordingly, that part of this Court's judgment which upheld the validity of those provisions of the testator's will having to do with the establishment of a charitable trust having been affirmed, such amended order [1] provided that the charitable trust directed to be established by the testator in clause Third III of his will and codicil thereto violated neither the rule against perpetuities nor the rule against unreasonable accumulations, but, on the contrary, created a present vested charitable gift in favor of the Ruby R. Vale Foundation. Such amended order went on to state, however, in conformity with the ruling of the appellate court, that the charitable gift in question is not necessarily free from possible partial defeasance due to the fact that certain language of clause Third II(b) "* * * may limit the period during which the entire non-marital trust might continue * * *". In other words, the basic question framed for this Court's

---

1. Such part of the amended order employs substantially the same language used in the order entered by this Court in its opinion on the point affirmed on appeal.

decision on remand is whether or not the testator lawfully expressed an intention to limit the time during which moneys might accumulate for his intended charitable foundation as well to limit the duration of the non-marital trust itself to a period which does not violate the rule against perpetuities. If it should be decided that such attempted limitation was effective, the second question is concerned with which sequential gifts intended by the testator are either vested or must vest, if at all, within the period of the rule.

Accordingly, should this Court now determine that the language found in clause Third II(b) which purports to define the duration of the trust (namely that, subject to clause Fifth, the trust is to terminate after being held during the successive lives of the testator's daughter, all his named grandchildren, and the respective lawful issue of every of his three grandchildren living at his death or during the period of time valid under the law of the State of Delaware "* * * for lawful issue born after my death * * *") serves to cause a cessation of the accumulation of moneys for the testator's intended charitable foundation short of the designated sum of $2,000,000, then it must necessarily be found that such intended and specified total accumulation is subject to partial divestment. In such event the Court must then go on to decide what sequential testamentary gifts intended by the testator are valid, thereby determining which, if any, of the subsequent gifts are either vested or subject to vesting, if at all, within the requisite time. If, on the other hand, this Court should decide that the gift to the charitable foundation is absolute, that is to say that it is vested and not subject to defeasance, then it follows that the testamentary trustees should be permitted to accumulate income for such purpose for as long as is required in order to achieve the collection of the total sum of $2,000,000 designated by the testator for educational uses and purposes whether or not such period of time exceeds that prescribed by the rule against perpetuities for the vesting of testamentary gifts.

Finally, in further conformity with the opinion on remand, after decreeing that the gift of a one-fourth part of the net income of the non-marital trust to the testator's daughter, Grace Vale Asche, for

life is valid as being either vested or subject to vesting, if at all, within the period prescribed by the rule against perpetuities, the order on remand recited that the validity of all other gifts following that made to the charitable foundation remained open for determination after the further proceedings which have now taken place. The parts of the Vale will here pertinent are set out in full in the opinion of the Supreme Court and will not be restated here.

In the leading case of *Taylor v. Crosson*, 11 *Del.Ch.* 145, 98 *A.* 375, the basic question before the court was put as follows:

> "The most important point for decision is whether the rule against perpetuities is applicable. Inasmuch as this rule is a peremptory command of law, not a rule of construction, and its object being to defeat intention, therefore, as Professor Gray says:
>
>> 'Every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied.' "

See also *Equitable Trust Company v. Snader*, 17 *Del.Ch.* 203, 151 *A.* 712, *Emerson v. Campbell*, 32 *Del.Ch.* 178, 84 *A.2d* 148, and *Layton v. Black*, 34 *Del.Ch.* 1, 99 *A.2d* 244. Compare *Myers v. Bank of Delaware*, 38 *Del.Ch.* 228, 149 *A.2d* 745.

In *Girard Trust Company v. Rector, Wardens and Vestrymen of St. Anne's Protestant Episcopal Church*, 30 *Del.Ch.* 1, 52 *A.2d* 591, on the other hand, the present Chancellor in reaching a determination that a bequest for charitable uses, a traditionally favored purpose, was vested and otherwise valid, stated that if any doubt had existed on the question as to whether or not such gift was vested and so not subject to the rule against perpetuities that under the existing circumstances he would be inclined to adopt the approach suggested in 2 Page on Wills (*Lifetime Ed.*) § 925:

> "* * * If one construction of the will will cause it to violate the rule against perpetuities, restraints on alienation, or against accumulation of income, and another construction will make it comply with these rules, the construction which makes it comply with these rules will be preferred."

This approach has been used to aid in the vesting of private interests in the case at bar, the Court having stated:

> "We must try to determine the testator's intent from the language of the will as a whole. If the intent so found creates a gift which violates the rule against perpetuities, the gift must fail. The Court will, however, prefer that construction which does not offend the rule, if such a construction is reasonably justified by the language used. The Court will also prefer a construction that the gift is vested rather than contingent".

Citing *Cann v. Van Sant,* 24 *Del.Ch.* 300, 11 *A.2d* 388, *aff'd, Frome v. Cann,* 24 *Del.Ch.* 353, 16 *A.2d* 248, *Myers v. Bank of Delaware, supra,* and *Girard Trust Company v. Rector, Wardens and Vestrymen of St. Anne's Protestant Episcopal Church, supra.*

The Court, noting that the intent of the testator was to comply with the rule against perpetuities, gave paramount emphasis to such purpose. Presumably, earlier determinations of the Court of Chancery to the effect that such rule is a peremptory command of law, its object being to defeat and not to carry out the intention of the testator (see *Emerson v. Campbell, supra*) were tacitly modified. The Supreme Court went on to decide that "* * * one part of the will must give way to the other part; that is, either the duration of the trust must be extended until the two million dollars is accumulated, or the accumulation must stop short of that amount."

It having been decided by the Supreme Court that the duration clause is to take precedence over the testator's instructions to accumulate the specific sum of $2,000,000 as artificial principal, it would seem to follow that inasmuch as a lawful limit is sought to be set on the duration of the entire trust, all of the various gifts made by the testator to members of his family in being at his death and to issue of his grandchildren born after his death are either vested or must vest, if at all, within the period of the rule against perpetuities unless the language used by him for the measuring of time for the vesting of such intended gifts must be construed to in-

clude lives not in being at the testator's death, is otherwise defective in legal meaning, or offends some other rule with which a will must comply in order to be valid. In other words, as I interpret the Supreme Court's opinion on the subject of the duration of the trust here in issue, it is the law of the case that Mr. Vale has attempted to use the longest period permissible as a yardstick for the vesting of his intended gifts, and the cases of *Stellings v. Autry,* 257 *N.C.* 303, 126 *S.E.2d* 140, 146, and *Fitchie v. Brown,* 211 *U.S.* 321, 29 *S.Ct.* 106, 53 *L.Ed.* 202, which are authority for such a yardstick, are cited by the Court. And I am satisfied that the so-called termination language here used by the testator, as hereinafter interpreted, is more precise than the language employed in the cited cases. Accordingly, if the trust is intended to terminate within the period of the rule at the expense of the charitable foundation, there would appear to be no sound reason advanced for not carrying out what has been held to be the testator's basic and paramount intent unless he has inadvertently or otherwise flaunted the rule for measuring lives by including lives of too remote a degree. Furthermore, notwithstanding the Court's failure to state categorically that Mr. Vale has succeeded in his attempt to keep within the rule, it would appear that not only precedence but legal sanction was given to the language used for the purpose of fixing a designated duration for the trust here in issue. I say this because the suggestion that the life estate in one-fourth of the trust income bequeathed to Grace Vale Asche, the testator's daughter, is either vested or must vest, if at all, within the period of the rule would presumably not have been made had the Court not viewed the language used by the testator to be a means of causing an effective termination of the trust within the limits fixed by the rule. In other words, once primary emphasis is given to the testator's intent not to violate the rule, the so-called duration clause is clearly subject to being interpreted as successfully achieving such desired result unless the testator has used measuring lives beyond the span of the rules. This being so, it would appear to follow that the testator's directions for payment of the other three-fourths of such trust net income in equal shares to his three named grandchildren are likewise valid unless the language used has improperly extended the term of the trust so as to enure to the

benefit of grandchildren unborn at his death and other remote issue. It similarly follows if one searches for what has been held to be the testator's basic intent through what is often a complex and confusing maze of words that on the death of Grace it is intended that her one-fourth interest should be paid to her surviving issue per stirpes, and at the death of each of his three grandchildren, his or her one-quarter share of income is to be paid for life to his or her surviving children alive at the testator's death, the principal, at the death of each such child, to go to his or her surviving issue per stirpes. However, as to children born of any of the designated three grandchildren after the testator's death, such income is to be paid to such children for fifteen years, at which time they are to receive the trust principal. In other words, assuming that the testator did not purport to benefit his after-born grandchildren and that he intended issue to mean children, all others intended to be benefited by the testator, other than unborn children of the testator's three grandchildren, being persons in existence at the testator's death, it would appear that the testator has complied with the rule against perpetuities inasmuch as the gifts to great grandchildren not in being at the testator's death are payable to them absolutely six years short of the expiration of twenty-one years. By the same token, the testator's alternative instructions for payments "* * * during the successive respective lives, or lawful periods of time of my grandson, Frederic B. Asche, Jr., and his lawful children and their lawful issue * * *", would appear to be similarly valid, it being clear, in my opinion, that in referring to issue of his grandchildren the testator intended to refer to their children and not to an indefinite line of descendants. In the light of the emphasis given to Mr. Vale's stated intention not to violate the rule against perpetuities it would seem to follow that he clearly intended to benefit children of his grandchildren and not remote descendants whose interests could not possibly vest within the period fixed by the rule, *Farrell v. Faries*, 25 *Del.Ch.* 404, 22 *A.2d* 380. Finally, in clause Fourth (10) of the will, in apologizing for the detail of his instructions, the testator states that the facts recited are necessary among other reasons to explain why his daughter * * * her children and her grandchildren have been given only life estates or for the periods of time lawful under existing law."

Counsel for the widow's estate contend, however, that the testator, in making gifts "* * * to each and every of my grandchildren * * *", has made a class gift in which grandchildren not in being at the time of the testator's death are entitled to share. However, having first mentioned his three living grandchildren by name and having directed a division of trust income into four parts, one part for his daughter and one part for each grandchild, as well as having referred to his three grandchildren in other portions of his will, I have no doubt that later mention of grandchildren without further identification was intended to refer to the three individuals earlier identified by name, *Goldberger v. Goldberger*, 34 *Del.Ch.* 237, 102 *A.2d* 338. Furthermore, in clause Third II(b) of his will, the so-called duration clause, he also directs the holding of property in trust during the successive lives of "* * * all my grandchildren * * *", naming his three grandchildren as of November 30, 1960. In short, a reading of the entire will satisfies me that the testator had no intention of benefiting theoretical later born grandchildren but rather had in mind the individuals he specifically named. Accordingly, there is no need, in my opinion, to consider the applicability of the common law presumption that a woman, regardless of age and physical condition, may bear children as long as she lives, a question on which the Supreme Court divided but did not rule in *A. B. v. Wilmington Trust Company*, 48 *Del.Ch.* 191, 191 *A.2d* 98, after citing the leading cases in support of such doctrine, namely *Taylor v. Crosson, supra, du Pont v. du Pont*, 18 *Del.Ch.* 316, 159 *A.* 841, and *Equitable Trust Company v. McComb*, 19 *Del.Ch.* 387, 168 *A.* 203. I accordingly conclude that inasmuch as the testator has complied with the rule against perpetuities by selecting lives in being as the yardstick for measuring the duration of the trust, it necessarily follows that all interests directed to be paid to members of his family under the terms of clause Third III are vested or must vest, if at all, within the period sanctioned by the rule against perpetuities, subject, of course, to the effect, if any, of clause Fifth on such dispositive scheme.

The next question to be considered is the effect of clause Fifth of the Vale will on the testator's general dispositive plan. The

clause in question purports to set up an alternative method of disposition of the trust assets here in issue under stated circumstances. First of all, a reading of the clause demonstrates that an attempt was here being made by the testator to equalize the interests of his three grandchildren in the total of both his estate and that of their father, Frederic B. Asche. In his effort to effectuate such intent the testator provided that in the absence of a valid agreement or court decree bringing about an equal distribution of such property among the three grandchildren that the provisions of the will which direct the payment of beneficial interests to the two female grandchildren or their lawful issue were to be suspended and the income otherwise due such persons accumulated until their father's will shall have been probated. Then, if it should be demonstrated that the grandson has been accorded treatment substantially equal to that accorded his two sisters, the above special provisions for the son's benefit are to be cancelled and his two sisters and their lawful issue are to receive the income accumulated for the contingency of inequality feared by the testator. On the other hand, if it proves that the son is not accorded equal treatment by his father, then such accumulated income and principal are to go to the grandson and his lawful issue for the purposes stated.

Following Mr. Vale's death and the admission of his will to probate, the testator's grandson, Frederic B. Asche, Jr., "* * * for the purpose of eliminating problems in the administration of my grandfather's estate * * *" renounced any interest in the Vale estate due him under the provisions of clause Fifth, such renunciation purportedly being made not only for himself but for his "* * * heirs, legatees, devisees and legal representatives." It is contended that such renunciation not only eliminated the grandson's interest in the property arrangements made for his benefit in clause Fifth but the interests therein of his children as well, who, it is claimed, take derivatively through their father. The guardian for the minor children, pointing out that the general law on the subject clearly provides that a renunciation can not operate so as to affect the rights of other persons who take directly under a will as principals, contends that the grandson's children in the present instance are enti-

tled to take as principals under the testator's will rather than derivatively through their father, 96 *C.J.S. Wills* § 1151c.

No agreement having been entered into and no decree having been handed down which would effectuate the testator's plan to equalize "* * * the fair market value of the shares of all three grandchildren in the total estates of both their father and their maternal grandfather * * *", the questions to be determined are whether or not the provisions of clause Fifth are valid, and, if so, what is the effect thereon, if any, of Frederic B. Asche, Jr.'s, renunciation.

Clause Third II(b) provides that in the event the alternative conditions of clause Fifth become applicable that the trust is to continue "* * * (5) for and during the successive respective lives, or lawful periods of time, of my grandson FREDERIC B. ASCHE, JR., and his lawful children and their lawful issues as therein provided." The guardian for the minor children of Fred, Jr., and others draws attention to the testator's previous use of the word lives as meaning lives in being and points out that it is the law of the case that the testator's intent to have the trust run only for the period of time permitted by the rule against perpetuities must be accorded precedence. Thus it would appear that as applied to clause Fifth the trust here in issue is to continue successively during the life of the testator's daughter, the life of Frederic B. Asche, Jr., and the lives of the latter's children living at the testator's death, or during the period of time valid under the rule against perpetuities for the vesting of interests in unborn issue. The guardian *ad litem* and the widow's executor contend that the provisions of clause Fifth are to become operative when the time comes to make "a present and immediate distribution" to the granddaughters and their issue and that such distribution may not occur within any of the measuring lives fixed in Mr. Vale's will and that accordingly such provisions violate the rule against perpetuities. They also contend that inasmuch as the directed accumulation is not to take place "until and after" the probate of the son-in-law's will, such accumulation not only violates the rule against perpetuities but also the rule against unreasonable accumulations. Finally, the guardian for Frederic B. Asche, Jr.'s

children and others contends that the provision for payment of accumulated income to him or his issue after the death of his father is a springing executory interest which possibly may not vest within lives in being and twenty-one years thereafter. It is accordingly contended that clause Fifth must be read out of the will and that the gifts made under clause Third are accordingly absolute. Finally, the executors of Mr. Vale's will take the position that while none of the dispositive provisions of clause Fifth violates the rule against perpetuities, Frederic B. Asche, Jr.'s, renunciation is either a nullity as being conditioned upon the attainment of an objective which, under the law, cannot be achieved, or, in the alternative, that such renunciation has effectively eliminated the special treatment accorded not only Frederic B. Asche, Jr., but also his children and is accordingly inoperative.

The wish of the testator was clearly "* * * for equality among all of the children of my daughter and their lawful issue * * *" (clause Fourth), and he went to great pains to ensure that such would come to pass. He was also desirous of preventing "* * * the duplication of taxes on successive life estates to my daughter and to her children and grandchildren * * *" (clause Fourth), and he labored to achieve these purposes and at the same time avoid a breach of the rule against perpetuities. Such equalization was sought to be made by the testator by taking into account *inter vivos* gifts, the size of the daughter's life estate, his widow's exercise of powers of appointment, and uncertainty as to exactly how his son-in-law, Frederic B. Asche, might distribute his estate among his three children by means of *inter vivos* gifts, by will, or otherwise. He could hardly have expected to be entirely successful in perfecting this basic but complex plan, namely to benefit as equally as possible the largest possible number of his descendants at the least tax cost to his estate without violating the rule against perpetuities. However, as directed by the mandate of the Supreme Court, this Court must bend every effort not only to avoid intestacy but as well to give force to the fullest extent possible the precedence accorded the testator's intent to benefit his descendants down to after-born great grandchildren without violating the rule.

Applying the principles set forth in the opinion of the Supreme Court, it is my opinion that if the duration clause is effective, as has been found, to halt the accumulation of moneys for the charitable foundation short of $2,000,000 in order to bring about a valid vesting of the gifts set forth in clause Third III(b), it is similarly effective to bring into play the equalizing provisions found in clause Fifth within lives in being and twenty-one years.

Clause Fifth purports to give Frederic B. Asche, Jr., an interest in additional trust income for life which interest is then to devolve upon his children living at the testator's death. As to children of Frederic B. Asche, Jr., born after the testator's death but in being before or at their father's death, such beneficiaries are to receive interests in income for fifteen years, their interests becoming possessory at their father's death. It is also clear that the right to receive corpus after the life estates in question is an interest which must vest either at the death of Frederic B. Asche, Jr., or at the death of other lives in being, namely the grandson's children living at the testator's death, or as to great grandchildren born after the testator's death upon the expiration of fifteen years following the death of Frederic B. Asche, Jr. This intricate scheme is designed to function on the theory that while the gift of income to his granddaughters and their children under clause Third C(b) is vested, clause Fifth operates to postpone enjoyment of such interests during Frederic B. Asche's lifetime subject always to the possibility of divestment of the granddaughters' interests, depending on whether or not the equality of treatment desired by the testator for his grandchildren has been insured by action taken by the son-in-law prior to his death. Since all of this must happen, if at all, "* * * during the successive respective lives or lawful periods of time of my grandson, Frederic B. Asche, Jr., and his lawful children and lawful issue * * *", with provision made as to vesting after fifteen years of principal in the case of children of grandchildren born after the testator's death, and hinges on the state of affairs found to exist concerning the property rights of the respective estates of the three grandchildren following the death of Frederic B. Asche, the prevailing intent of the testator must be given force and effect and the trust brought to an end at such event regard-

less of the amount of accumulated income then in hand for the charitable foundation. As to the precise time at which a determination as to whether or not approximate equality exists is to be made, I think it reasonable to take a practical view of the testator's prevailing intent rather than to anticipate an indefinite delay on the part of the law in the probate of a will. As stated in 4 Restatement, Property, § 374, comment (f):

> "Thus when a will directs distribution to be made to persons to be ascertained 'on the probate of this will,' or 'on the conclusion of the administration of this estate', it is reasonable to infer that the testator has merely envisioned those preliminaries required by law prior to the time when distribution first becomes practicable and that the quoted language was not intended to postpone the ascertainment of the distributees by the injecting of a period of indefinite length."

While delays in the administration of estates happen, an extreme case being supposed by Gray in his Rule Against Perpetuities, § 214.3, there is, in my opinion, because of the current concern of government, acting under duly enacted laws, that there be a prompt collection of taxes on the estates of the dead as well as on the interests of decedents' estates passing to others under wills or the intestate laws, no reasonable possibility that the beneficial interests of Frederic B. Asche, Jr., and those of his children in the total estate of Frederic B. Asche will not be approximately determined within twenty-one years after the latter's death. A similar conclusion was reached over sixty years ago in *Belfield v. Booth*, 63 *Conn.* 299, 27 *A.* 585, at a time when the executive branch of the government was not, as it were, an interested party to estate settlements. Furthermore, as noted above, the mere probating of a will cannot reasonably be construed to be the sole factor to be considered in reaching such a determination inasmuch as Mr. Asche may die intestate. More to the point, the language of the will itself appears more concerned with results than with technical points of estate settlement. Clause Fifth (2) directs a suspension of the payment of either income or principal to "* * * either of my granddaughters, or their lawful issue, *until and after* my said grandson, Frederic B. Asche, Jr., and/or his children, or

their lawful issue, shall have received or shall have the legal right to receive a cash total sum of net income and of real or personal property from the principal of the whole estate of his father, Frederic B. Asche * * *", such property consisting of property awarded or bequeathed or by *inter vivos* gifts or otherwise. In clause Fifth (3) the testator directs that his granddaughters or their issue "* * * shall share in the distribution of either income or principal of my estate as herein provided *only if and after* my said grandson, or his lawful issue, shall take or shall have been decreed the legal right to receive a share in all the real and personal property owned and possessed by his father at his death which is approximately equal to the share therein of either of his sisters or their lawful issue."

In my opinion, the testator's one concern expressed at the beginning of clause Fifth "* * * that the total reasonable and fair value of the whole share of my grandson, Frederic B. Asche, Jr., and/or his lawful issue at and upon his death, in the accumulated property of his father, under his will and his gifts during life, shall be equal to or shall not be less in total fair worth or reasonable value of the respective shares therein of either of his two sisters and/or their respective lawful issue * * *" is susceptible of being substantially carried out if not fully achieved.

Frederic B. Asche is presently a resident of Texas, and there, as elsewhere, there are criminal penalties for failure promptly to submit a will to probate on the death of its maker. Furthermore, present day state inheritance taxes as well as federal estate taxes are an inexorable force in contravention of any substantial delay in the winding up of decedents' estates. I conclude that there is no reasonable possibility that the respective rights of the testator's three grandchildren in their father's estate will not be approximately determined within the period of the rule against perpetuities and that even in the unlikely event that such determination should not be completely made during lives in being and twenty-one years, the duration clause serves to bring about a termination of the basic trust within the period of the rule and thereby bring about payment of accumulated income or principal held for the two granddaughters or their lawful

issue in such manner as to approximate the testator's intent on the basis of the state of the respective estates of the grandchildren and their lawful issue at such time. Compare *Equitable Trust Company v. Ward,* 29 *Del.Ch.* 206, 48 *A.2d* 519.

To achieve all that the testator had in mind when he drew up an exceedingly intricate testamentary plan could hardly be expected. However, I conceive the duty of this Court under the mandate of the Supreme Court to be that of carrying out to the fullest extent possible the intent of the testator to "* * * benefit his descendants as long as possible * * *". Such intent is not achieved by holding that the testator died intestate to a substantial degree merely because clause Fifth may be difficult to carry out, a difficulty which is enhanced by reason of Frederic B. Asche, Jr.'s, act of "* * * unequivocably and forever fully * * *" renouncing and disclaiming any interest due him under clause Fifth of his grandfather's will.

The testator's wish "* * * for equality among all of the children of my daughter and their lawful issue * * *" is further demonstrated in clause Fourth which is concerned with equalization necessitated by certain *inter vivos* declarations of trust in favor of Frederic B. Asche, Jr., and his lawful issue. Coupled with his wish for equality was the desire of the testator to avoid duplication of taxes, which, of course, would occur in varying degrees depending on the extent it is held that the testator died intestate. Thus this Court's earlier finding of total intestacy from and after the running of an indefinite period during which designated funds were to be accumulated for the charitable foundation which the testator directed to be first established would have, if affirmed, destroyed the testator's entire sequential scheme of successive life estates and thereby greatly increased the tax burden on his property, which he wished to avoid, as his estate would have then descended through successive taxable stages.

I conclude that the provisions of the will viewed in the light of the opinion of the Supreme Court do not violate the rule against perpetuities and that the property passing thereunder should be permitted to descend as outlined above. An order to such effect will

be entered but only after counsel have submitted additional memoranda on the force and effect of Frederic B. Asche, Jr.'s unrevoked renunciation on the distribution of property ultimately passing to his children under the terms of clause Fifth of the testator's will.

An appropriate order may be submitted on notice.