In the Matter of the Estate of ALLEN SMITH, deceased.

*New Castle, April* 5, 1929.

*Charles B. Evans*, for Security Trust Co., trustee.

*Lilburne Chandler*, for Edwina L. A. Neese.

*Ayres J. Stockly*, for Cora J. Smith.

*Albert F. Polk*, for A. Irving Smith and Howard B. Smith.

THE CHANCELLOR. The exceptions are filed in behalf of two persons who claim to share in the fund as "next of kin according to the statute of distribution" of Frank M. Smith and Warner H. Smith, two of the five sons named in the will of Allen Smith, both of whom died without issue. Frank M. Smith died leaving Cora J. Smith, his widow, on October 13, 1917, about ten months before Clifford E. Smith, who was the surviving life beneficiary and whose death marked the period for distribution to the remaindermen. When Warner H. Smith died is uncertain. Mrs. Neese claims that he died some time before September 1, 1905, some thirteen years before the period for ultimate distribution arrived, leaving her as his widow. Because of certain divorce proceedings, Warner H. Smith must be found to have died when asserted by Mrs. Neese in order for her claim to have any standing whatever.

It thus appears that the excepting claimants are widows respectively of Frank M. Smith and Warner H. Smith, who died without issue, and the claim is that the widows are among the "next of kin according to the statute of distribution," and as such are entitled to have paid over to them the portions of their respective husband's shares which the statute of distribution gives to widows.

In disposing of these claims it is in order first to notice certain general propositions which the law applies in construing such testamentary language as we find in this case. In the first place, the bequest in remainder to the five sons was of a defeasible interest. Their absolute enjoyment of the benefaction was conditioned on their being *in esse* when the time for distribution arrived. The word "then" is decisive on that point. If any of them should then be dead leaving issue, such issue should take the deceased

son's share, and if there were no such issue, then the deceased son's share should be paid over to his next of kin, etc. Thus there was a provision that persons other than the sons should take by way of substitution in lieu of any one of them who may have died prior to the distribution date. If any son died before that date his interest was so completely wiped out that his next of kin, though they took the share originally intended for him, would do so not through him but in his place and from the testator directly. *In re Nelson's Estate*, 9 *Del. Ch.* 1, 74 *A.* 851.

The next question to be considered is this: A son of the testator having died without issue before the period of distribution arrived and his "next of kin according to the statute of distribution" being substituted as the legatees of his share, as of what date are we to look for the ascertainment of the persons who compose the class "next of kin"? Are his next of kin those who would be such at the time of his own death, or those who would be such at the time when distribution is to be made? The case just cited of *In re Nelson's Estate* answers the question, and states the general rule to be as follows: "Under a substitutional bequest to the 'heirs,' 'next of kin,' 'relatives,' etc., the persons to take are to be ascertained at the death of the persons whose 'heirs,' 'next of kin,' etc., are spoken of, and not at the period of distribution." There being no peculiarity of language in the will now before me which suggests the inapplicability of this general rule, it is accordingly accepted as controlling in this case, and I am therefore required to ascertain the next of kin of Frank M. and Warner H. Smith as of the respective dates of their decease.

This brings me to the next question, viz.: Who on those dates were the "next of kin according to the statute of distribution"? Applied to this case, the specific question is whether or not the widow of each of the deceased sons can be admitted to the class covered by the descriptive phrase. Had the expression been "next of kin" simpliciter, authority of eminent repute can be cited to the effect that not only widows, but even children of a deceased brother where a brother is living, would be excluded. For standing alone those words literally mean nearest blood relations. They are not in their natural signification synonymous with distributees under the statutes of distribution, which group

generally includes not only persons who are not near relatives, such as husband and wife, but also blood relations who are not nearest or next to the deceased. Hence "next of kin" standing alone has been held not to be understood as denoting the same persons as distributees under the intestacy statute; the words are confined to nearest blood relations. *Elmsley v. Young*, 2 *Mylne & K.* 780; *Withy v. Mangles*, 10 *Clarke & F.* 215; *Fargo v. Miller*, 150 *Mass.* 225, 22 *N. E.* 1003, 5 *L. R. A.* 690.

As has often been remarked, words of accepted meaning are taken in their accepted sense. But inasmuch as the prime object of all construction is to ascertain the intent which words seek to convey, it follows that if it is apparent that words of settled meaning were intended by the testator to be used in other than their ordinary sense, the intent must prevail and the words interpreted harmoniously therewith. Another rule which is axiomatic is that in seeking the testamentary intent regard must be paid to all the language that assumes to express it. It will not do to reject any portion of it as meaningless if any reasonable significance is attributable thereto.

In applying these elementary principles courts have held that while "next of kin," standing alone, does not mean the same as distributees under the statutes of distribution, yet if anything appears in the will which shows that the testator meant "next of kin" to mean distributees under the statute, the special testamentary definition of the phrase will be accepted and distribution in obedience thereto will be decreed. In the will before us there appears the expression, "according to the statute of distribution." By the use of this expression we are bound to assume that the testator meant something. The only thing which can be conceived of as having been intended by this modifying phrase is that "next of kin," which it explains, was meant by the testator to have a more enlarged significance than its literal import suggests. In *Duffy v. Hargan, et al.*, 62 *N. J. Eq.* 588, 50 *A.* 678, language substantially the same as this was held to mean " 'statutory next of kin'; that is, next of kin who are in fact nearest, and those persons also who by statute represent or stand in the place of those who are nearest." It is interesting to note that our statute of distributions (*Revised Code* 1915, § 3382) makes no use of the

expression "next of kin" until the descending and ascending line of issue is extinct, in which case the distribution is to the next of kin in equal degrees, etc. If the next of kin in such a case as the pending one were to be strictly confined to the class referred to as such by the statute, the absurd result would follow that more remote blood relations would take to the exclusion of children and parents. This result would be so glaringly at variance with the natural order of things as to require its rejection. By the use of the words "next" and "kin," the testator manifestly meant blood relations to be designated and among such relations an order of preference to be allowed based on nearness. But by reference to the statute he must have meant that the nearness of the kin should be according as the statute ascertained it, which of course admits of the principle of representation. In other words the only meaning which can be ascribed to the whole phrase, containing within itself, as it does, suggestions which are inharmonious, is the one given to it by the case from the New Jersey Chancery Court just cited.

With this understanding of the phrase, I take up finally the question of whether or not a widow may come within it. Our statute of distributions after specifying who shall take an intestate's personalty, by way of a proviso enacts that a certain share shall go to the widow, if any. It is contended in behalf of the two widows in this case that inasmuch as the testator made reference to the statute of distributions, that statute must be regarded as incorporated in the will and being so incorporated it must be accepted in its entirety as supplying the rule of distribution; that the shares intended for the two sons should therefore be distributed just as though they had died with their shares in possession and composing a portion of their estates. If that be so, the widow's rights to share in the distribution would be undoubted. Had this bequest, instead of being "unto his next of kin, according to the statute of distribution of the State of Delaware," been in this form, "as if he died intestate," we have the authority of Lord Eldon for the view that all distributees named by the statute would participate in the distribution in the proportions prescribed by its provisions, whether they were all of kin or not. *Garrick v. Camden,* 14 *Ves.* 372. In that case, the widow

would participate. The case just cited was where the language was "among my next of kin, as if I had died intestate." That language is substantially the same as we have in the will before us. The point which Lord Eldon was called upon to decide in that case was whether or not a widow could be admitted to participate in the distribution. He held not and the moving inducement to his judgment appears to have been that in no sense could a widow qualify under the term "kin." The same result is found in New York state. *Tillman v. Davis, et al.*, 95 *N. Y.* 17, 47 *Am. Rep.* 1; *Luce v. Dunham*, 69 *N. Y.* 36; *Keteltas v. Keteltas*, 72 *N. Y.* 312, 28 *Am. Rep.* 155; *Murdock v. Ward*, 67 *N. Y.* 387. In *Luce v. Dunham, supra*, the court said:

"A provision directing generally that on the decease of a testator, his personal property be distributed as provided by statute in case of intestacy, would, of course, entitle the widow to be included in the distribution, though not especially mentioned, but where the distributees are, by the terms of the will, confined to the next of kin of the testator, effect must be given to that restriction, and the reference to the statute, or to the laws, merely affords the rule of distribution among the next of kin as if there were no widow."

In *Haraden v. Larrabee* and others, 113 *Mass.* 430, the rule is stated as follows:

"The words 'next of kin' are limited in legal meaning, as in common use, to blood relations, and do not include a husband or wife, unless accompanied by other words clearly manifesting a purpose to extend their signification; and the mere addition of a reference to the statute of distribution is not sufficient."

It is quite true, as contended by the solicitors for the widows, that if a will refers to the statute of distribution in such way as to indicate an adoption by the testator of the statute's provisions as his own testamentary disposition, courts should regard the statute as a part of the will incorporated therein by way of reference. But, even so, the question arises in this case as to what extent this testator incorporated the statute in his will by way of reference. Did he incorporate it *in toto* or only in part? He could have used language very simple in form as before indicated which would have taken the entire statute with all of its classes, including widows, over into his will. But he did not do this. He disclosed a primary intent to bestow his benefactions

upon the "next of kin" of his sons. This certainly did not include widows of his sons. The only purpose which reference to the statute can be understood as subserving is to designate the rule of distribution to be followed among those who can qualify as kin. To be sure the rule of the statute, which by adopting the principle of representation by stocks admits in certain junctures those distributees who are not *next* of kin, is to that extent in conflict with the testator's expression "next of kin." That is an inconsistency which calls for reconciliation if all parts of the testamentary language are to be credited with significance. I have before indicated how such reconciliation is to be effected. But whether or not such reconciliation be correct in principle is a matter that can be of interest only to the kin. Widows not being kin, cannot be concerned in it.

The conclusion is that the exceptants are not entitled to share in the distribution of the fund in court.

The foregoing has been written on the assumption that Warner H. Smith died before September, 1905, as claimed by Mrs. Neese, his former wife. She secured a divorce from him, which became final in November, 1908. He disappeared in 1905. It is claimed that he was seen in 1919 in Baltimore. Yet Mrs. Neese thinks she saw his dead body in September, 1905. Thinking that it was material to determine whether or not the body seen in 1905 was in fact that of Warner H. Smith, I directed testimony on the point to be taken before me. If the body referred to was not his, then his death is a matter of presumption, and on that presumption he died after Mrs. Neese divorced him, in which event of course she could have no possible claim. Assuming then to be true the *sine qua non* of Mrs. Neese's claim, viz. his death in September, 1905, it nevertheless follows as a matter of law, for the reasons hereinbefore given, that she can have no right as widow to share in the distribution. The direction for the taking of testimony on that point will therefore be revoked.

Order accordingly.