WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, as Executor of and as Trustee named in the Last Will and Testament of Charles G. Blades, late of the City of Wilmington, County of New Castle and State of Delaware,

*vs.*

CLARENCE GRAY BLADES, MARIA I. EVANS, MARY M. FOREMAN, ELIZABETH P. DERRICKSON, NANCY E. DERRICKSON, ELLA M. RODNEY, IVY B. ROBINSON, WILLIAM B. BLADES, JR., J. WESLEY FOREMAN, WILLIAM B. FOREMAN, E. GERTRUDE SHEEP, HAROLD C. FOREMAN, L. ROSCOE FOREMAN, MARGARET F. LOVE, EFFA BLADES WEST, EZEKIEL P. BLADES, JR., RIDA DERRICKSON HOLLOWELL, ELIZABETH DERRICKSON SPEARMAN, L. CARL BLADES, J. VERNON BLADES, CHARLES CAMDEN BLADES, MELICK W. BLADES, JAMES EVANS BLADES, LEMUEL S. BLADES, JR., JAMES W. DERRICKSON, WALTER L. DERRICKSON, VERNON B. DERRICKSON AND JOHN B. DERRICKSON.

*New Castle, Feb. 28, 1934.*

*Robert H. Richards,* of the firm of Richards, Layton & Finger, *Charles F. Richards,* and *Elwood F. Melson,* of the firm of Borton & Melson, for complainant.

*Thomas Muncy Keith,* for all the appearing nephews and nieces except Effa Blades West.

*James H. Hughes,* for Effa Blades West.

*William S. Potter,* of the firm of Ward & Gray, for Florence Gray Blades, widow of the testator.

THE CHANCELLOR: The trustee asks to be instructed regarding its duty in the several particulars which are referred to in the ensuing numbered paragraphs.

1. Regarding the bequest to the testator's aunt, Mrs. M. I. Evans, I shall, without discussing the matter, accept the view which all the parties in present interest appear to have accepted, viz., that the bequest to her was of two hundred dollars per month so long as she should live.

2. The next question arises out of Item Third, subparagraph "b" of the will. The third item of the will devises and bequeaths all the rest, residue and remainder of the testator's estate, after the payment of debts and funeral expenses, to the complainant as trustee upon trust to hold,

etc., and pay out of the income respective specified amounts to his wife, his aunt, his three sisters and sister-in-law, and, after the death of the last survivor, to divide the corpus among his blood nephews and nieces. Sub-paragraph "b" of this item is as follows:

"b. To determine approximately and as near as can be determined by vouchers or otherwise the amount of annual income which my beloved wife, Florence Gray Blades, is obtaining from property derived from me during our life time, and after paying the expenses of the administration of the trust fund, to pay over out of the income arising from the said trust estate unto my said beloved wife, Florence Gray Blades, annually, and in as nearly as may be equal monthly installments such sum of money as will make up to her in conjunction with the income which she is already deriving from property acquired from me during our life time, the sum of Six Thousand Dollars ($6,000.00) annually."

During his life time the testator gave his wife money which she invested in a certain piece of real estate known as No. 318 West Main Street, Elizabeth City, North Carolina. The property was a residence and was occupied as such by the testator and his wife until his death on December 19, 1932.

The precise question presented under this branch of the case is whether or not the trustee, in determining the amount of annual income which his wife obtains from property derived from him during his lifetime for the purpose of making deductions from the six thousand dollar annual payment to her, should take into account the fair rental value of the dwelling while the same is being occupied by Mrs. Blades as a residence.

The testator gave personal property to his wife in addition to that which she invested in the residence. I assume this to be true, though the record does not disclose it. If the assumption is an erroneous one, any party in interest will on a proper application be afforded an opportunity to show it to be so. Making that assumption, which I believe is in accordance with the facts, it is apparent that

the testator knew that there was something other than the rental value of the home to which his language in reference to the determination of his wife's income was applicable. It is not necessary, therefore, to say that the testator must have thought of the rental value of the house which his wife would probably occupy, as income in order to find some subject-matter to which his language touching income could relate. No argument, then, can be made on that score against the contention of Mrs. Blades that the rental value of her home while occupied by her is not income deductible from the annual sum of six thousand dollars payable to her.

"Words of accepted meaning are to be taken in their accepted sense." It was so stated *In the Matter of the Estate of Allen Smith,* 16 *Del. Ch.* 272, 145 *A.* 671, 673. It was further observed in that case that if words were intended by a testator to be used in other than their accepted sense, the intent of course must prevail. But an intent contrary to the usual and ordinary meaning of the words used to express it should be manifested by convincing language appearing in the context, or, in some exceptional cases perhaps, by elucidating circumstances.

Certainly the word "income" ordinarily means something coming in. It is something actually received in the way of compensation for work, or the yields of a business, or the return derived from investments, or the products of land. It is in substance so defined in the Oxford English Dictionary. See the following cases where the term has been similarly defined: *Mayor and Alderman of Jersey City v. Meyer, et al.,* 106 *N. J. Law,* 391, 150 *A.* 354; *Stony Brook Railroad Corp. v. Boston & M. Railroad,* 260 *Mass.* 379, 157 *N. E.* 607, 53 *A. L. R.* 700; *Featherstone v. Norman,* 170 *Ga.* 370, 153 *S. E.* 58, 70 *A. L. R.* 449, and *Diefendorf v. Gallet,* 51 *Idaho,* 619, 10 *P.* (2d) 307. In the absence of an arbitrary definition of the word which the user of it has manifested a purpose to adopt, I do not see how "income," whatever features it might otherwise possess, can lack an association in the common understanding with the

idea that it is something which is paid over and delivered to a recipient. Income is not something which a person is saved from the necessity of paying out. If it were, every person who owns his own home would be receiving an income from it. Yet no one can think that that is so.

In this case, so long as Mrs. Blades· occupies the house as her residence, she is of course saved the expense of rent or lodging. But she ·is in receipt of no income from the house. It is not reasonable to think that her husband regarded the home when he occupied it as yielding him an income equivalent to its rental value. I am of the opinion that he did not intend when he referred to his wife's income from the property which he had given her to mean that the rental value of the same home should be income in her hands when she occupied it. To hold otherwise, the court would have to indulge an illiberality of construction against the widow which, according to the court in *Moffett v. Elmendorf*, 152 *N. Y.* 475, 46 *N. E.* 845, 57 *Am. St. Rep.* 529, is not to be favored.

The trustee should therefore disregard the rental value of the home so long as it is in the personal occupancy of Mrs. Blades.

3. Besides the six thousand dollar annual sum which Item Third in its sub-paragraph "b" directs the trustee to pay to Mrs. Blades, the will in sub-section "d" of the same item directs the trustee to pay certain other monthly sums respectively to sundry beneficiaries so long as they shall live.

The trustee requests an instruction upon the question of when these payments are to date from. Specifically, are they to commence to accrue immediately from the death of the testator? As to the annual sum payable to the widow out of the income from the residue which the trustee holds, it is clear that it is payable as of the date of the testator's death. This is in accordance with what Chancellor Curtis characterized in *Equitable Trust Co. v. Kent, et al.*, 11 *Del.*

*Ch.* 334, 101 *A.* 875, 876, as the established rule in Delaware.

In the case just cited the Chancellor remarked that in this State the cases appear to limit "the application of the rule to the widow or children of the donor, or to some one as to whom he stood *in loco parentis.*" It is not entirely clear to me just what the rule was to which the Chancellor referred when he remarked upon the limit which is placed upon its application in this State. In the two reported cases which have arisen in this State where there was a gift of the residuary estate to a trustee upon trust to pay the income to one for life and after the death of the life beneficiary to pay over or transfer the corpus to another absolutely, it so happens that the life beneficiary was a child. One of those cases was *Equitable Trust Co. v. Kent, et al., supra,* and the other was *Equitable Guarantee & Trust Co. v. McCurdy,* 11 *Del. Ch.* 156, 98 *A.* 220. In both of those cases the income was allowed from the date of the testator's death. No Delaware case has been called to my attention, nor am I aware of any, where a life beneficiary of the residue given in trust was other than a child. Therefore any language which may be referred to in our reported cases to the effect that the rule which allots to the life beneficiary income from the death of the testator derived from a residue held in trust for a life beneficiary remainder over of the corpus to another, is applicable only when the life beneficiary is a widow or child or one towards whom the testator stood *in loco parentis,* is *obiter dictum.*

In the instant case none of the life beneficiaries stands in the relation of a child to the testator. The widow of course stands on her own peculiar relationship. The other life beneficiaries are an aunt, three sisters and one sister-in-law. This case therefore calls for a decision upon whether or not there is any distinction to be drawn in the matter of alloting income to life beneficiaries where the trust is of the residue for life remainder over, between

those cases where the life beneficiaries stand in the special relationship of widow or children on the one hand, and those cases where the life beneficiaries do not stand in any such relationship, as in the instant case, on the other.

Chancellor Curtis, in *Equitable Trust Co. v. Kent, et al., supra,* though not called upon to say so, expressed the opinion that no such distinction is tenable. The dictum he uttered in that regard, I am of the opinion, is a correct expression of the law. While the amount of the residue of an estate cannot be definitely stated until the final account is passed, yet as of the testator's death it is certain in amount and can be retrospectively stated and identified at a later date. Such being so, it would not seem reasonable or just to say that income from that residue, which came in during the period of administration and which for the convenience of administration ought in many circumstances to be held by the executor until his final settlement, should be taken from the life beneficiary to whom income had been given and added to the residue itself for the ultimate benefit of remaindermen. See *Green v. Green,* 30 *N. J. Eq.* 451. When the reason of the matter is thus stated, it is apparent that any consideration of the status of the life beneficiary in relation to the testator has no logical relevancy whatever. Mr. Page in his work on *Wills* (*2d Ed.*) at *Section* 1025, *p.* 1686, states the law applicable to this subject as follows:

"Where he absolutely gives the beneficiary a given income and merely indicates in his will the source from which it is to be obtained, the general rule is that the income in such cases is to be estimated from the death of the testator, enough of the capital, if necessary, being retained to pay the income during the period in which the fund is non-productive. The income is payable from the testator's death and not from the time that the trustee receives the property. A gift of the income of the residue shows that the income begins at the death of the testator. The income is payable from the testator's death, even where the first payment is to be made only when 'sufficient funds for that purpose shall come' into the hands of the trustee."

The conclusion under this branch of the case is, that to the extent the residue contains income that fell into it since the testator's death, the monthly amounts named by the testator should be paid to the respective beneficiaries from the day of the testator's death.

4 and 5. The complainant seeks instructions upon two other questions. These are (a) whether the nephews and nieces who are to receive the residue after all the six life beneficiaries have died are to take the same *per capita* or *per stirpes,* and (b) whether the nephews and nieces who are to take the remainder are to be ascertained as of the date of the testator's death or as of the date of distribution.

The court is asked to give instructions upon these questions notwithstanding they are not at the present calling for answer. How long it will be before the last survivor of the life beneficiaries will die, it is of course impossible to say. The asking of the questions implies a doubt upon them. It does not seem to me advisable for the court to give an answer to them at this time before the eventualities of fact necessitate an answer; because it may very well be that by the time in the future when events will crystalize the facts to which any present answer will apply, births may have introduced new parties who will be interested in the questions now asked. Where there is a present right in a party to have a judicial determination of a controverted right, the fact that future persons may come into being whose interests will be affected by a present adjudication will not prompt the court to postpone to a future time a decision of the question, provided the interests of those who may come into being *in futuro* are virtually represented by parties *in esse. DuPont, et al., v. DuPont, et al.,* 18 *Del. Ch.* 316, 159 *A.* 841. This is so *ex necessitate.* But where there is no present necessity impelled by existing circumstances—where, in other words, in bills for instructions a question is prematurely raised, this court has declined to express its opinion. It was so in the reported case of *Equitable Trust Co. v. McComb, et al.,* 19 *Del. Ch.*

387, 168 *A.* 203, and in the unreported case of *The President, Directors and Company of the Farmers Bank v. Jopp, et al., Kent County* 1928, *Chancery Docket F. p.* 324. This course of procedure is in harmony with the general rule on the subject. *Stewart, et al., v. Stewart, et al.,* 61 *N. J. Eq.* 25, 47 *A.* 633; *Ogden, et al., v. McLane, et al.,* 73 *N. J. Eq.* 159, 67 *A.* 695; *McCarthy, et al., v. McCarthy, et al.,* 121 *Me.* 398, 117 *A.* 313. See, also, 3 *Pomeroy, Equity Jurisprudence,* (*4th Ed.*) § 1157, *p.* 2741; 2 *Page on Wills,* (*2d Ed.*) § 1402, *p.* 2337.

Decree in accordance with the foregoing.