FARMERS' TRUST COMPANY OF NEWARK, a corporation of the State of Delaware, Trustee under the Last Will and Testament of Bayard Murray, late of White Clay Creek Hundred, New Castle County and State of Delaware, deceased,

<em>vs.</em>

MARY MACKEY, WILLIAM J. MCCAUGHAN and ELIZABETH MCCAUGHAN, Executors under the last will and Testament of Sallie Meredith, deceased, JOHN HENDERSON, MARTHA FORD, Owner and Proprietor of Flower Hospital, JEFFERSON MEDICAL COLLEGE, a corporation of the State of Pennsylvania, and Percy W. Green, Attorney General of the State of Delaware.

<em>New Castle, April 18, 1938.</em>

*J. Rankin Davis,* for complainant.

*Percy W. Green,* Attorney General *in propria persona.*

*Edmund S. Hellings,* for Martha Ford and Jefferson Medical College.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* for the remaining defendants.

THE CHANCELLOR: This case calls for instructions to the trustee under the will of Bayard Murray who died June 5, 1933. By the fourth item of his will he disposed of all the rest, residue and remainder of his estate, after the payment of his debts and funeral expenses and a certain specific legacy and a pecuniary legacy, to the complainant in trust to invest the same and to pay the income therefrom as follows:

To Mary Mackay, fifty dollars per month during her life; to Sallie Meredith, seventy dollars per month during her life; to John Henderson, thirty dollars per month during his life; fifteen hundred dollars per year for twelve years for the education of nine boys in a medical college (not more than three boys at a time taking a four year course) to be selected by the Dean of the University of Delaware; and the remaining net income while the above

payments were continuing and all future net income there-after, to a hospital in Newark, Delaware, if there should be one and, if not, to Jefferson Medical College in Philadelphia, Pennsylvania.

The executor under the will passed a final account on November 27, 1936, and on that date paid over to the trustee to be held in the trust, $16,486.30.

Before the passing of the final account, Sallie Meredith above named as one of beneficiaries of the trust died, viz., on January 29, 1936.

None of the beneficiaries under the trust has ever received any payments from the trustee. This has been due to the fact that the trust fund yielded a net income which is woefully inadequate to meet the annual charges provided for by the testator. The trustee now seeks instructions from this court as to how the net income shall be applied under the will.

It will be observed that the annual payments which the testator contemplated as possible to be met from the net income, as long as the three individuals lived and the three boys per year were being educated, would make an annual total of thirty-three hundred dollars. Since January 29, 1936, when Sallie Meredith died, the annual requirements would equal twenty-four hundred and sixty dollars.

The net income falls far short of ever having been able to meet these payments. Since the trustee received the fund on November 27, 1936, the annual net income has been only about six hundred and sixty dollars.

What then shall the trustee do? That is the question which the bill puts.

Of course, for the present and for some time to come, the hospital in Newark or in its stead Jefferson Medical College in Philadelphia, are not interested in the income's

disposition. With respect to income, they have no claim thereto except as income may be "remaining" after the other charges are taken care of. There is no "remaining income" after the other provisions have been fulfilled. The Newark hospital or the Jefferson Medical College is in the status of a residuary legatee. Such a legatee has no right to call upon particular legatees to abate. *Warren v. Morris, et al.,* 4 *Del. Ch.* 289, 304.

Should the principle of abatement be applied in apportioning the income among the other beneficiaries whose claims are prior in right to the hospital or to the medical college?

Those other beneficiaries may be grouped under two classifications, viz., (a) the three individuals who are to receive monthly payments, and (b) the nine unidentified medical students. The former are to receive eighteen hundred dollars per year; the latter, if three are studying medicine at once as the testator apparently contemplated, though he did not specifically exact it, are to receive fifteen hundred dollars per year. Apportioning six hundred and sixty dollars a year to each class, would yield three hundred and sixty dollars to the individuals as a group, and three hundred dollars to the medical students. There would not be enough to maintain one medical student at the testator's figure of five hundred dollars per year. And apportioning the three hundred and sixty dollars applicable to the individuals among themselves would cause their several monthly payments to abate to such an extent that instead of their receiving the respective monthly sums of fifty dollars, seventy dollars and thirty dollars as desired by the testator, they would receive respectively ten dollars, fourteen dollars and six dollars per month. Further, if abatement be made between the individuals and the medical students on the basis of one student a year instead of three, there would be only a trifle over one hundred and forty dollars per year, instead of the testator's contemplated five hundred dollars,

for him, while the monthly sums to the individuals would be in the neighborhood of fourteen dollars, nineteen dollars and sixty cents and eight dollars and forty cents respectively.

Since the death of Sallie Meredith, the figures would work out differently. But even then, if the principle of abatement be applied between the two classes of beneficiaries, not only would the individuals fall far short of the monthly sums given them, but there would not be enough for the medical students to pay the expenses of one of them, not to say three, for a year in a medical school.

Now how should the trustee disburse this income which is so lamentably below the testator's anticipation? It seems to me the only thing the court can say to the trustee in that situation is that the testator's wishes should be carried out as nearly as may be according to what would be just and equitable to all the parties in interest. As to the individuals, their monthly stipends commence from the death of the testator. *Wilmington Trust Co. v. Blades*, 20 *Del. Ch.* 98, 171 *A.* 757. Thus the law considers that the testator fixed the time when these payments should start as immediately. But with respect to when the education of the medical students should commence, the testator has given no indication of his intent. So far as the will shows, it may be now or later. In view of the inadequacy of the fund, it is clear that in any event, whether the gifts to the individuals be abated for the benefit of the prospective medical students or not, the time when the education of one or more of them commences must be postponed to some time in the future when accumulations of income will be sufficient to cover the expense. If the testator had foreseen this situation, is it to be supposed that he would have desired the individuals who were to receive the monthly benefactions to suffer a serious abatement of their stipends, when the only advantage to the medical students (strangers who were unknown to him) would be to accelerate the

time when the plan for their education would commence to operate? To so suppose, would be to attribute to the testator a wish to curtail benefits which he desired persons to receive who were the particular objects of his bounty, solely in the interest of accelerating the time when unidentified strangers should be admitted to a medical college. It does not seem reasonable to say that such would have been his intent. If a refusal to abate the individual legacies in favor of an accumulation for the hastening of the benefits to the medical students, would mean an ultimate diminution in the total income going to them, there would be reason in saying that the abatement should be applied. But as time and not substance is the only element involved, it would appear to be just that the individuals whose lives are passing with each day, should not be made to suffer the abatement. If they were made to suffer, the flight of time would take from them some of the substance of the testator's bounty and confer no corresponding benefit of substance on the medical students. To be sure a refusal to compel the individuals to abate in favor of an accumulation for the medical students, would result in depriving the ultimate remaindermen of as early an enjoyment of the income as would otherwise be the case. But it does not appear reasonable to say that the testator would have desired the objects of his immediate regard to be sacrificed to the interests of an ultimate remainderman who was last in the ranking order of his benefactions.

As between the individuals and the unidentified medical students, the problem which the trust presents appears therefore to be one of administration rather than one of substantive rights. This is so, since applying all the net income to the individual legacies takes nothing, in the final result, from the medical students. In the view I take of the case, the individuals can secure the benefits of the income in so far as it goes, and at the same time the plan for the medical students is interfered with only to the extent

that the time for the commencement of its operation is postponed—an interference which so far as the will shows is not contrary to its provisions.

The trustee will be instructed to pay the income first to the individuals who are to receive the monthly payments. As long as it is insufficient to meet the payments in full, the principle of abatement should be applied in making the distribution to them.

The next question is—how shall the income be calculated during the period intervening between the testator's death and the transfer by the executor to the trustee of the corpus? In this State the doctrine of equitable income supplies the rule. *Equitable Trust Co. v. Kent, et al.,* 11 *Del. Ch.* 334, 101 *A.* 875. In that case Chancellor Curtis fixed four and one-half per cent. as the rate at which to calculate the income. He considered that in view of the yields on careful and conservative investments then obtainable (*anno* 1917), the four and one-half per cent. rate was just and fair. Since then investment conditions have been changed. The 1937 session of the General Assembly provided by statute, a four per cent. rate for equitable income. 41 *Del. Laws, c.* 207. Though the statute postdates the estate in the case *sub judice,* and may not therefore be here applicable, yet I shall apply the statutory rate of four per cent. instead of the former rate of four and one-half per cent.

Let a draft decree be submitted in accordance with the foregoing.