WILMINGTON TRUST COMPANY, a Banking Corporation of the State of Delaware, Trustee under an Agreement with William Coyne, Petitioner,

v.

William COYNE, W. Carroll Coyne, Sara C. Dickinson, Esther C. Flanagan, Carol Elizabeth Coyne, Susan Margaret Coyne, Tracy Ann Coyne, Mary Frances Coyne, Christina Louise Coyne, Gregory Thomas Dickinson, Linda Dickinson Tase, William Jeffrey Dickinson, Gary Scott Dickinson, Thomas Michael Flanagan, Timothy James Flanagan, Peter Carroll Flanagan, Stephen Manley Flanagan, William George Flanagan, David Coyne Flanagan, Patrick James Flanagan, Respondents.

Court of Chancery of Delaware,
New Castle.

Submitted Feb. 3, 1977.

Decided May 12, 1977.

Jane R. Roth of Richards, Layton & Finger, Wilmington, for petitioner.

Henry N. Herndon, Jr., and David H. Williams of Morris, James, Hitchens & Williams, Wilmington, for respondents William Coyne, W. Carroll Coyne, Sara C. Dickinson and Esther C. Flanagan.

Johannes R. Krahmer and David Ley Hamilton of Morris, Nichols, Arsht & Tunnell, Wilmington, for respondents, Carol Elizabeth Coyne, Susan Margaret Coyne, Tracy Ann Coyne, Mary Frances Coyne, Christina Louise Coyne, Gregory Thomas Dickinson, Linda Dickinson Tase, William Jeffrey Dickinson, Gary Scott Dickinson, Thomas Michael Flanagan, Timothy James Flanagan, Peter Carroll Flanagan, Stephen Manley Flanagan, William George Flanagan, David Coyne Flanagan and Patrick James Flanagan.

MARVEL, Chancellor:

In 1919 William Coyne established an inter vivos trust, naming Wilmington Trust Company as trustee, in which indenture, after giving directions for the payment of income derived from said trust to his wife until his son, Philip Patrick Coyne, should reach his twenty-first birthday, directed the payment of the income thereafter arising from said trust, after the payment of a fixed commission to the named trustee, to his son, Philip, during his lifetime. Care was taken in the drafting of the indenture in issue to provide for the disposal of the income derived from the trust upon Philip's death, the trust instrument providing that upon the latter's death and over the period fixed for the duration of the trust, namely twenty-one years following the death of Philip, trust income was to be paid over to his children and the issue of any deceased child or children in equal shares, such issue to take, however, only the share, his, her, or their parent would have taken if living. But should there be no child or issue of any deceased child living at the time of Philip's death, then the balance of income and dividends was to be paid over to Philip's heirs-at-law according to the intestate laws of the State of Delaware.

In like manner, at the end of the period of twenty-one years after the death of Philip, at the expiration of which the trust was to terminate, the trust corpus and accumulated income was directed to be paid over to Philip's surviving children or to their issue should any child be deceased, the instrument going on to state:

" * * * and provided, further, in case the said Philip Patrick Coyne shall die, leaving no child or children him surviving, or should there be no issue of any deceased child or children living at the time of the termination of said trust period, viz., twenty-one years after the death of said Philip Patrick Coyne, then the said principal and accumulated income shall be paid into the heirs-at-law of said Philip Patrick Coyne according to the intestate laws of the State of Delaware."

Philip having died on January 4, 1974, it is the contention of the grandchildren of the trustor that the date for determining not only those who are admittedly now entitled to the balance of trust income and dividends now in the hands of the trustee but also those who are entitled to the corpus of the trust is the date of Philip's death, thereafter contending that inasmuch as they are the ultimate remaindermen with an indefeasible interest in the corpus as well as to accumulated trust income, they are now entitled to have paid over to them not only the balance of income and dividends held by the trustee but also trust principal, rather than waiting out the period of twenty-one years following Philip's death as stipulated in the indenture, thereby collapsing the trust, *Saunders v. Vautier,* 49 Eng.Rep. 282 (1841), *Claflin v. Claflin,* 149 Mass. 19, 20 N.E. 454 (1889), and compare *Crumlish v. Delaware Trust Co.,* Del. Supr. 29 Del.Ch. 503, 46 A.2d 888 (1946). See also 4 Scott on Trusts (3rd ed.) Sec. 337.

Opposing this contention are the great grandchildren of the trustor, who maintain that the correct date for determining the time for distribution of the corpus of the trust here in issue is the time at which the trust is to terminate by its own terms and that the remaindermen who are entitled to such corpus cannot be determined until such date.

First of all, I am of the opinion that it was a purpose of the trustor, in light of the choice of language which he employed in establishing the trust here in issue, that it was under the circumstance of Philip's

death with issue, either children or grand-children, that the trust was to continue for the longest permissible period allowed by the rule against perpetuities although it is clear that this time for determining those entitled to any balance of income and dividends was to be on Philip's death, Philip having died without issue.

And while it was the trustor's intention that the heirs at law of Philip entitled to receive trust income as a result of Philip's death without children or without issue of a deceased child or children, would be entitled to continue to receive such income and dividends during the following twenty-one years, and that upon the expiration of twenty-one years following Philip's death said heirs at law were intended to be entitled to the corpus of the trust according to the intestate laws of the State of Delaware, I am satisfied that the trustor failed to make it clear that the class entitled to be paid corpus was other than the heirs at law of Philip as of the time of Philip's death.

█ It is established in Delaware that the grantor of trust funds may validly postpone the distribution of the corpus of his estate through the medium of a trust, *Equitable Trust Company v. Snader,* 17 Del.Ch. 203, 151 A. 712 (1930), and further that the unhampered enjoyment of trust corpus may be postponed when such purpose is clearly intended by the creator of the trust, *Lewes Trust Company v. Smith,* 28 Del.Ch. 64, 37 A.2d 385 (1944), and *Crumlish v. Delaware Trust Company,* supra. Furthermore, the intention of a testator is to be gleaned from the language of the entire will or indenture in the light of surrounding circumstances, *Delaware Trust Company v. McCune,* Del. Ch., 269 A.2d 256 (1970), aff'd, Del., 280 A.2d 534 (1971), sub nom. *Bank of Delaware v. Delaware Trust Company.* In addition, when the rule against perpetuities is clearly in the mind of the testator or trustor, an intention that a trust continue for the maximum time allowed is implied, *Bank of Delaware v. Clark,* Del.Ch., 249 A.2d 442 (1968), *Riggs National Bank of Washington, D. C. v. Zimmer,* Del.Ch., 304 A.2d 69 (1973), aff'd

sub nom. *Jackson v. Riggs National Bank,* Del., 314 A.2d 178 (1973).

In light of the foregoing authorities, I am satisfied that the trust instrument here in issue manifests an intention that trust corpus was to be held intact for a twenty-one year period following Philip's death. However, by failing clearly to indicate that the time for determining Philip's heirs at law was to be at a time other than his death that the death of Philip must be the time for determining the heirs at law of such decedent.

█ The rule in Delaware is that heirs shall be determined as of the date of death of the ancestor absent a clear showing of a contrary intention on the part of the testator or trustor that heirs be determined as of some other time, *In re Smith's Estate,* 16 Del.Ch. 272, 145 A. 671 (1929). Here, as noted above, there is no indication that the heirs at law are to be determined at any time other than that of Philip's death. Indeed, under the principle of incongruity, the only time reasonable for such determination to be made is that of Philip's death, *Bank of Delaware v. Bank of Delaware,* Del.Ch., 289 A.2d 639 (1972), aff'd Del. 301 A.2d 280 (1973), and *Bedyk v. Bank of Delaware,* 40 Del. 140, 176 A.2d 196 (1961). In other words, were the heirs at law of Philip to be determined at the end of the twenty-one year period after Philip's death, there would be doubt as to who should receive income and dividends during the interim. And for the trustee to retain payment of income for twenty-one years after Philip's death would contravene the clear instructions of the will. Finally, to determine who are heirs-at-law at different times would be unreasonable. Accordingly, it is submitted that inasmuch as there is no clear intention to the contrary and because such conclusion is reasonable, the heirs of Philip are to be determined at the time of his death as to both the income and the corpus of the trust, taking into account that the law of Delaware, as noted above, is to the effect that the heirs of a designated ancestor, in this case Philip Patrick Coyne, are determined at the time of such ancestor's death in the

absence of " * * * a clear and unambiguous indication of an intention to the contrary * * * ", *Security Trust Co. v. Irvine,* 33 Del.Ch. 375, 93 A.2d 528 (1953), and *In re Nelson's Estate,* 9 Del.Ch. 1, 74 A. 851 (1909). On the other hand, where a different time for determining heirs is clearly demonstrated, such fixing of a different time will be respected, *Riggs National Bank v. Zimmer,* Del.Supr., supra, aff'd sub nom. *Jackson v. Riggs National Bank,* supra, and *Bank of Delaware v. Bank of Delaware,* supra.

In short, I am satisfied here that the trustor's primary concern was for Philip, his children, and the issue of any deceased child or children. And if in fact it was a scrivener's error which resulted in a failure to provide for a time other than Philip's death for the determination of his heirs at law, the trustor nonetheless accepted the language of the indenture as drawn and formally executed it on October 14, 1919. There is no evidence that the document did not express his intentions as to Philip, his children, their issue and Philip's heirs at law, and the use of the word "then" in connection with fixing the time of payment of principal and accumulated income to Philip's heirs at law is not enough to fix the time for the determination of such heirs at law as other than at Philip's death.

There being no material facts in issue, judgment on the pleadings will be granted to the grandchildren of the trustor William Coyne and denied as to the great grandchildren of said trustor.

On notice, a form of order providing for distribution of the principal and accumulated income of the trust here in issue to the grandchildren of the trustor may be submitted.